BOUTALL, Judge.
This is an appeal from a summary judgment granted plaintiff as beneficiary under an insurance policy on the life of her husband. The policy contained a Supplemental Contract providing for additional benefits resulting from accidental death. The insurer paid the benefits under the basic policy but refused to pay the additional benefits under the Supplemental Contract. Plaintiff brought suit to recover these additional benefits. Both parties filed motions for summary judgment. The trial court granted summary judgment to plaintiff, and defendant insurer appeals.
The facts are not in dispute. By application dated March 7, 1963, Curtis J. Plai-sance applied for a family life insurance policy of Atlas Life Insurance Company, defendant-appellant herein. On April 1, 1963, Atlas issued Policy No. M 14554 insuring Mr. Plaisance, his wife and children. The basic coverage on the life of Mr. Plaisance was $5000.00 of whole life insurance, and his wife, Mrs. Gail Guillot Plaisance, plaintiff-appellee herein, was the named beneficiary thereof. As a part of the policy, Atlas issued a Supplemental Contract on the life of Mr. Plaisance agreeing to pay an additional $5000.00 in the event of his accidental death. The premiums of the basic policy and the Supplemental Contract are included in the monthly payment of $9.84 stated on the face of the policy.
The first payment of premium was made at the time of application, and although required to be made monthly, payments were made thereafter at irregular intervals as demonstrated by the premium receipt books. However, it is clear that the policy was paid up to August 1, 1968, and that the payment due on that date was not made. Mr. Plaisance died of accidental causes on September 22, 1968. Mrs. Plai-sance attempted to make payment of the premiums on September 23, 1968, and this was returned on September 25, 1968. No written notice of the due date of the August 1, 1968, payment was given to the insured.
Upon the surrender of the policy and the premium book, the company paid to Mrs. Plaisance the basic amount of $5000.00 in accordance with the non-forfeiture provisions of the basic policy. However, Atlas refused to pay the $5000.00 benefit for accidental death under the Supplemental Contract contending that it had terminated as a result of non-payment of the August 1, 1968, premium and the expiration of the 31 day grace period. Mrs. Plaisance then filed this suit to recover the Supplemental Contract amount.
As the trial judge correctly pointed out, the issue here to be determined is whether the policy was issued on a monthly premium basis or on an annual premium basis. This issue arises because of the provisions of LSA-R.S. 22:177 which clearly prohibit the lapse of any life insurance policy for non-payment of premiums within a year of default in the absence of a written notice specifically described therein addressed to the insured, except in the cases of policies issued upon the payment of monthly or weekly premiums or for a term of one year or less. There is no dispute as to the term being for more than a year or as to failure to give the prescribed notice. The dispute is simply as to whether the policy was issued on the basis of annual premiums or monthly premiums.
If the policy in question was issued upon the payment of monthly premiums, there was no obligation on the insurer to give the written notice required by the statute. Therefore, non-payment of the August 1, 1968, payment on the due date or within 31 days thereafter (the grace period in the *790 policy) would permit the insurer to declare the policy lapsed and assert the non-forfeiture provisions thereof. This automatically terminated the Supplemental Contract before the death of the insured.
On the other hand, if the policy in question was issued on the basis of an annual premium, the failure of the insurer to give the required statutory written notice would prohibit the lapse of the policy before the date of the insured’s death, and the Supplemental Contract would still be in effect. To answer the question we must of course refer to the policy as the contract between the parties.
The policy on its face is unquestionably designed and printed as an annual premium policy. Atlas contends that it is a monthly policy because on the first page thereof it struck out the word "annually” in the paragraph setting forth the premium and inserted the word “monthly” in two places. Additionally, a monthly premium book was issued and the policy number begins with “M” indicating a monthly premium. Also the application for the policy was marked with the indication for monthly premiums.
The best that can be said for these contentions is that if they are given effect, only confusion and contradiction in the policy provisions will result. Whether or not the applicant understood the difference between a monthly premium policy and an annual premium policy payable in monthly installment cannot be established, for he, of course, has died. To establish the premium basis of the policy we must resort to the policy itself, as it so clearly provides in Section 11 Entire Contract under the title Policy Contract.
The policy proclaims in the clearest possible language in Section 7 Manner of Payment, under the general title, Premiums :
“The insurance hereunder is based upon annual premiums, but such premiums may be paid in semi-annual, quarterly or monthly installments at the Company’s rates therefor.” (Emphasis supplied)
Consistent with this is the paragraph immediately preceding, which is Section 6 Consideration:
“The consideration for this policy is the application therefore, copy of which is attached hereto and made a part hereof, and the payment of premiums in the amounts at the times stated on the first page, with death of the Insured.” (Emphasis supplied)
Clearly, the changes on the first page of the policy simply reflect the time and amount of the installment payment due, as does the application.
We feel that the wording of those sections of the policy alone are sufficient to conclude that this policy is based upon annual premiums, but there are additional provisions and reasons which are influential. As remarked above, the policy form is clearly printed as an annual premium policy. Necessarily, all computations contained in the policy are made upon the basis of an annual premium payment and the benefits thereunder accrue and are payable as such. Confusion and chaos would result from any attempt to apply a monthly premium basis to this policy. This is made abundantly clear by a consideration of the following provisions of the policy:
1. All loan values are predicated on the cash value at the end of the current policy year.
See Section 23 of the Policy reading:
“The company * * * will loan to the insured * * * any sum not exceeding the amount of cash surrender value for the end of the current policy year.”
2. Automatic premium loans shall be at the end of year (next succeeding anniversary of the policy).
See Section 24 of the Policy reading:
“ * * * the Company will * * * automatically charge as a loan against this policy * * * a sufficient amount to pay both premium and loan interest to *791 next succeeding' anniversary of the poli-Qy ***."
3. No cash values are available to Insured until “three annual premiums have been paid”.
See Section 27 of the Policy reading:
“ * * * a cash value is not available as an option until three annual premiums have been paid.”
4. The Table of Non-Forfeiture values are only those at end of “policy year”.
See caption at head of Table of Values and Section 26 of the Policy reciting:
“After premiums have been paid for the number of years for which a non-forfeiture value is first shown in Table £ * * * »
5. For computing values one is referred to Table C and by the terms of policy:
Section 27:
“This table shows the value guaranteed under the policy upon the assumption that premiums have been fully paid for the completed years stated * * *.”
(Emphasis in foregoing quotations supplied)
Finally, we are referred to the case of Francis v. Universal Life Insurance Company, 223 So.2d 188 (La.App. 3rd Cir., 1969). The trial judge relied upon the principles of this case in rendering judgment, and properly so. In the Francis case, the court carefully analysed the provisions of the policy sued upon, which contained provisions remarkably like those in the instant policy and concluded:
“ * * * the policy was issued upon the payment of annual premiums, but that to suit the convenience of the insured these annual premiums could be paid in semi-annual, quarterly or monthly installments.”
Appellant contends that the policy in the Francis case enumerated the rates for the various payments and points out that this policy does not specify them and particularly the annua] premium rate. He urges that this omission is sufficient to distinguish between the two policies since the Francis policy clearly provides for the payment of an annual premium on other than an annual basis, and supplied the figures and percentages for the various periods of payment.
We can conceive no clearer statement than that contained in Section 7 quoted hereinabove making the policy basis an annual premium and permitting installments at various intervals. The only difference is the statement that these are to be paid “at the Company’s rates therefore.”, instead of specifying the rates in the policy. Assuredly, a simple inquiry of the Company by the insured would produce the appropriate rates in the event an insured desired to change the method of payment. At the same time, we should point out that the monthly installment rate would certainly be more than V12 of the annual premium as would occur in the Francis policy. This is admitted by the Company representative in deposition. We, along with the trial judge, find the Francis case most convincing.
We conclude that the trial judge was correct in granting summary judgment in favor of the plaintiff, as beneficiary under the policy and Supplemental Contract included within it, and we affirm his judgment. The costs of this appeal are assessed to defendant-appellant.
Affirmed.