IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 1, 2008 Session

## ROBERT H. WALDSCHMIDT v. REASSURE AMERICA LIFE INSURANCE CO. ET AL.

**Rule 23 Certified Question of Law**
**United States Bankruptcy Court for the Middle District of Tennessee**
**No. 3:07-0370A       George C. Paine, II, Judge**

---

**No. M2008-01133-SC-R23-CQ - Filed November 24, 2008**

---

This appeal involves a question of law concerning the interpretation of Tenn. Code Ann. § 56-7-2303 (2008) certified by the United States Bankruptcy Court for the Middle District of Tennessee. The bankruptcy court has asked this Court to determine whether the issuer of a deceased debtor's life insurance policy was exempted under Tenn. Code Ann. § 56-7-2303(d) from the statutory notice requirements for lapsed life insurance policies because the premium payments on the policy were being paid monthly. We hold that the plain language of Tenn. Code Ann. § 56-7-2303(d) exempts from the notice requirements in Tenn. Code Ann. § 56-7-2303(a) "any policies upon which premiums are payable monthly or at more frequent intervals." Based on the undisputed facts, the premiums for the debtor's life insurance policy were "payable monthly." Therefore, the issuer of the policy was not required to give either the debtor or the trustee the notice required by Tenn. Code Ann. § 56-7-2303(a), and the policy lapsed in accordance with its terms before the debtor's death.

**Tenn. Sup. Ct. R. 23 Certified Question of Law**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, JJ., and E. RILEY ANDERSON, SP.J., joined.

Joseph Allen Kelly, Nashville, Tennessee; Susan A. Kidwell, Austin, Texas; and Kurt M. Carlson, Chicago, Illinois, for the petitioner, Reassure America Life Insurance Co.

Robert H. Waldschmidt, Nashville, Tennessee, for the respondent, Robert H. Waldschmidt, Trustee.

### OPINION

### I.

On September 28, 1995, Robert W. McLean applied to Allied Life Insurance Company ("Allied") for a term life insurance policy. In his application, Mr. McLean instructed that the premiums would be paid monthly by bank draft. Allied issued Mr. McLean a ten-year level term life insurance policy effective January 5, 1996 in the face amount of $1,000,000. The data page of the policy stated that the "initial monthly bank draft premium" would be $351.00. On November 6,

2006, Reassure America Life Insurance Company ("Reassure America"), Allied's successor in interest, notified Mr. McLean that his "new premium" effective on January 5, 2007 – the tenth anniversary of the policy – would be $1,290.60 and that this new premium would "be billed at the same frequency as your current premium."

Mr. McLean consistently paid the monthly premiums via automatic bank draft through the payment due on July 5, 2007. On July 19, 2007, three of Mr. McLean's creditors filed a petition in the United States Bankruptcy Court for the Middle District of Tennessee to place him in involuntary bankruptcy because he was not paying his debts as they became due and because he owed them over eleven million dollars. On July 24, 2007, the bankruptcy court granted the creditors' motion for the appointment of an interim Chapter 7 trustee, and Robert H. Waldschmidt became the trustee of Mr. McLean's bankruptcy estate.

Mr. Waldschmidt immediately froze all of Mr. McLean's bank accounts, including the account from which the funds to pay the monthly premiums for Mr. McLean's life insurance policy were drawn. As a result, the bank refused to honor Reassure America's draft for the August 2007 premium payment and reported to Reassure America that the account had been frozen. On August 10, 2007, Reassure America sent a letter to Mr. McLean at his business address informing him of the bank's refusal to honor the draft. The letter also informed Mr. McLean that the failure to make this payment could cause his coverage to enter the grace period and urged Mr. McLean "to submit your premium payment to keep your insurance coverage in force."

Mr. Waldschmidt requested Reassure America to change the mailing address for Mr. McLean's policy to his own business address. Reassure America acknowledged that the change of address would be effective on August 21, 2007. On September 5, 2007, Reassure America notified Mr. McLean, at Mr. Waldschmidt's address, that his "policy [had] lapsed without value" because the premium due on August 5, 2007 had not been received. The September 5, 2007 letter also informed Mr. McLean how he could reinstate the policy without evidence of insurability.

Mr. McLean died on September 25, 2007. Even though Mr. Waldschmidt acknowledges that he received Reassure America's September 5, 2007 letter, the record contains no evidence that either he or Mr. McLean attempted to reinstate Mr. McLean's policy. At the time of Mr. McLean's death, neither the August 2007 nor the September 2007 premium payments had been made.

On November 15, 2007, Mr. Waldschmidt filed an adversary complaint against Reassure America in the bankruptcy court, asserting that Mr. McLean's policy had not lapsed because Reassure America had failed to provide Mr. McLean the notice required by Tenn. Code Ann. § 56-7-2303(a) before an insurance company can declare a life insurance policy forfeited or lapsed. Reassure America responded (1) that Tenn. Code Ann. § 56-7-2303(d) exempted it from giving the notice required by Tenn. Code Ann. § 56-7-2303(a) because Mr. McLean had elected to pay his premiums monthly and (2) that the language in its policy, along with its August 10 and September 5, 2007 letters, effectively provided Mr. McLean all the information required by Tenn. Code Ann. § 56-7-2303(a).

Noting that Tenn. Code Ann. § 56-7-2303 had never been interpreted by the Tennessee Supreme Court, the bankruptcy court entered an order on May 22, 2008, certifying two questions of law to this Court. These questions are:

(a)     Whether Reassure America was excepted from the statutory notice requirement under T.C.A. § 56-7-2303(d), based on its assertion that the premiums were payable monthly, or whether Reassure America was required to provide the Debtor notice of forfeiture or lapse pursuant to T.C.A. § 56-7-2303(a).

(b)     If the statutory notice was required, whether Reassure America complied with T.C.A. § 56-7-2303(a), and whether the Policy lapsed before the Debtor's death.

We accepted this certification by order filed on August 25, 2008.

**II.**

Tenn. Code Ann. § 56-7-2303 has remained unchanged since its enactment in 1976.[1] It has likewise never been authoritatively construed by any of Tennessee's appellate courts. Questions regarding the construction of a statute and the statute's application to an undisputed set of facts involve issues of law, *Willis v. Tenn. Bd. of Regents*, 231 S.W.3d 912, 916 (Tenn. 2007); *State v. Jennings*, 130 S.W.3d 43, 45 (Tenn. 2004), which particularly lend themselves to the use of Tenn. Sup. Ct. R. 23. Accordingly, because it is the courts' responsibility to determine what a statute means, *In re Audrey S.*, 182 S.W.3d 838, 869 (Tenn. Ct. App. 2005), we will determine what Tenn. Code Ann. § 56-7-2303(d) means and whether, under the undisputed facts, it excuses Reassure America from providing the notice required by Tenn. Code Ann. § 56-7-2303(a).

When called upon to construe a statute, the courts must first ascertain and then give full effect to the General Assembly's intent and purpose. *Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896, 900 (Tenn. 2007); *State ex rel. Pope v. U.S. Fire Ins. Co.*, 145 S.W.3d 529, 534-35 (Tenn. 2004). We must construe statutes as we find them, *Jackson v. Jackson*, 186 Tenn. 337, 342, 210 S.W.2d 332, 334 (1948), and therefore, our search for a statute's meaning and purpose must begin with the words of the statute. *Blankenship v. Estate of Bain*, 5 S.W.3d 647, 651 (Tenn. 1999). We must (1) give these words their natural and ordinary meaning, (2) consider them in the context of the entire statute, and (3) presume that the General Assembly intended that each word be given full effect. *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007); *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). When a statute's language is clear and unambiguous, we need not look beyond the statute itself, *State v. Strode*, 232 S.W.3d 1, 9-10 (Tenn. 2007); *Corum v. Holston Health & Rehab. Ctr.*, 104 S.W.3d 451, 454 (Tenn. 2003), but rather, we must simply enforce it as written. *Wausau Ins. Co. v. Dorsett*, 172 S.W.3d 538, 543 (Tenn. 2005); *Miller v. Childress*, 21 Tenn. (2 Hum.) 320, 321-22 (1841).

---

[1] Act of Feb. 16, 1976, ch. 417 § 7, 1976 Tenn. Pub. Acts 67, 75-76.

Tenn. Code Ann. § 56-7-2303(a) provides that insurance companies cannot declare certain types of policies, including life insurance policies, forfeited or lapsed within six months after a default in the payment of any premium, installment, or interest, until they provide the insured with a written or printed notice containing the information prescribed in the statute. However, Tenn. Code Ann. § 56-7-2303(d) provides that the notice requirement of Tenn. Code Ann. § 56-7-2303(a) does not apply

> to group or group-type policies, to industrial life or accident and health policies, to any policies upon which premiums are payable monthly or at more frequent intervals, or to policies for which premiums are billed to and payable through an employer.

Reassure America insists that the premiums of Mr. McLean's life insurance policy were "payable monthly" and, therefore, that it was exempt from providing the notice required by Tenn. Code Ann. § 56-7-2303(a). In his brief, Mr. Waldschmidt responds that Tenn. Code Ann. § 56-7-2303(d) is ambiguous and, therefore, should be construed in Mr. McLean's favor and that the premiums on Mr. McLean's policy were annual premiums, despite Mr. McLean's election to pay them monthly. During oral argument, he also asserted that this Court should reject Reassure America's construction of Tenn. Code Ann. § 56-7-2303(d) because the Tennessee General Assembly could not have intended to strip the benefit of the notice required by Tenn. Code Ann. § 56-7-2303(a) from policy holders simply because they elected to pay their premiums on a monthly basis.

We need not resort to dictionaries to determine whether Tenn. Code Ann. § 56-7-2303(d) is plain and unambiguous.[2] It is. Tenn. Code Ann. § 56-7-2303(d) explicitly and clearly exempts from complying with Tenn. Code Ann. § 56-7-2303(a) "any policies upon which premiums are payable monthly." A premium is "payable monthly" if it must or may be paid on a monthly basis. *Dwight v. Tenn. Farmers Mut. Ins. Co.*, 701 S.W.2d 621, 622 (Tenn. Ct. App. 1985) (defining "payable" as "that must or may be paid"). Thus, the exemption in Tenn. Code Ann. § 56-7-2303(d) applies to any life insurance policy for which the premium must or may be paid on a monthly basis.

Having confirmed the plain meaning of Tenn. Code Ann. § 56-7-2303(d), we must ascertain whether the premiums for Mr. McLean's life insurance policy were "payable monthly." Relying on *Francis v. Universal Life Insurance Co.*, 223 So. 2d 188 (La. Ct. App. 1969), Mr. Waldschmidt insists that Mr. McLean's policy provided for an annual premium that Mr. McLean elected to pay in monthly installments. We have determined that Mr. Waldschmidt places too much weight on *Francis v. Universal Life Insurance Company* for three reasons.

---

[2]The meaning of individual words in a statute does not equal the meaning of the statute itself. Lief H. Carter & Thomas F. Burke, *Reason in Law* 71 (6th ed. 2002); A. Raymond Randolph, *Dictionaries, Plain Meaning, and Context in Statutory Interpretation*, 17 Harv. J.L. & Pub. Pol'y 71, 73 (1994). While consulting a dictionary may help identify the possible meanings of a word or phrase, the search for the General Assembly's purpose calls for an appropriate consideration of the statutory context in which the words are used, the underlying facts, the legislative history, and prior judicial decisions. Reed Dickerson, *The Interpretation and Application of Statutes* 103 & n.2 (1975); Samuel A. Thumma & Jeffrey L. Kirchmeier, *The Lexicon Has Become A Fortress: The United States Supreme Court's Use of Dictionaries*, 47 Buff. L. Rev. 227, 296 (1999).

First, the relevant portion of the Louisiana statute upon which the *Francis* court relied is materially different from Tenn. Code Ann. § 56-7-2303(d).[3] Second, the language of the policy construed by the *Francis* court is substantially different from the language of the policy at issue in this case.[4] Third, Mr. McLean's premiums became "payable monthly" when he elected to pay them monthly by bank draft. This fact is reflected in the data page of the policy which states that Mr. McLean's "initial monthly bank draft premium is $351.00." While the policy gave Mr. McLean the prerogative to change the "payment mode" of his premiums, the record contains no evidence that he ever did. Thus, Mr. McLean's premium payments for the term life insurance policy at issue in this case were "payable monthly" for the purpose of Tenn. Code Ann. § 56-7-2303(d).

Finally, Mr. Waldschmidt insists that we should avoid this construction of Tenn. Code Ann. § 56-7-2303 because it is bad policy. He asserts that the General Assembly could not have intended to deprive life insurance policy holders of the valuable statutory right to notice before forfeiture or default simply because they were paying their premiums monthly or even more frequently. This argument should be addressed to the General Assembly, not the courts, because it is not the courts' role to consider the wisdom or necessity of the General Assembly's policy decisions. *See Baldwin v. Knight*, 569 S.W.2d 450, 452 (Tenn. 1978); *Nashville Mobilphone Co. v. Atkins*, 536 S.W.2d 335, 340 (Tenn. 1976).

## III.

Having determined that the premiums for Mr. McLean's life insurance policy were "payable monthly," we answer the first certified question by holding that Tenn. Code Ann. § 56-7-2303(d) exempted Reassure America from providing either Mr. McLean or the trustee the notice required by Tenn. Code Ann. § 56-7-2303(a). Accordingly, Mr. McLean's policy lapsed before his death on September 25, 2007. In light of this holding, it is unnecessary to answer the second certified question. Accordingly, we pretermit it. The costs of this appeal are taxed to Robert H. Waldschmidt, trustee, for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[3] La. Rev. Stat. Ann. § 22:177 (West, Westlaw through 2008 Extraordinary Sess.) excluded life insurance policies "issued upon the payment of monthly or weekly premiums for a term of one year or less." Tenn. Code Ann. § 56-7-2303(d), which excludes life insurance policies "upon which premiums are payable monthly or at more frequent intervals" is broader than La. Rev. Stat. Ann. § 22:177.

[4] The insurance policy construed by the *Francis* court explicitly stated that "[t]he premium is payable annually in advance, but may be made payable in Semi-annual installments in advance or Quarterly installments in advance upon written request made by the insured to the Company before the end of the grace period." *Francis v. Universal Life Ins. Co.*, 223 So. 2d at 191. Mr. McLean's application, policy, and the subsequent correspondence between Reassure America and Mr. McLean refer only to "premiums," not "installments," regardless of the frequency with which the policy holder chooses to make the payments.