IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 10, 2023

## STATE OF TENNESSEE v. IVAN ASHLEY

**Appeal from the Circuit Court for Maury County**
**No. 29525     Christopher V. Sockwell, Circuit Judge**
_____

### No. M2022-01096-CCA-R3-CD
_____

Following a bench trial, the Maury County Circuit Court convicted the Defendant of patronizing prostitution from a minor, a Class B felony, in count one and solicitation of a minor to commit patronizing prostitution, a Class C felony, in count two. The trial court sentenced the Defendant to eight and three years, respectively, and merged the convictions. On appeal, the Defendant contends that the evidence is sufficient to support only a conviction of patronizing prostitution from a law enforcement officer posing as a minor, a Class A misdemeanor, in count one and that the evidence is insufficient to support any conviction in count two. The State concedes that the Defendant committed a Class A misdemeanor in count one and, therefore, that both convictions must be modified to misdemeanors. We agree with the State; modify the judgment in count one to reflect a Class A misdemeanor conviction of patronizing prostitution from a law enforcement officer posing as a minor; modify the judgment in count two to reflect a Class B misdemeanor conviction of solicitation of a law enforcement officer posing as a minor to commit patronizing prostitution; and remand the case to the trial court for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Modified, Case Remanded**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and KYLE A. HIXSON, JJ., joined.

Brandon E. White and Travis Jones, Columbia, Tennessee, for the appellant, Ivan Ashley.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Brent Cooper, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

# FACTS

In January 2022, the Maury County Grand Jury returned a three-count indictment against the Defendant. The first page of the indictment listed the charges and their classifications as follows: count one, patronizing prostitution of a minor, a Class B felony; count two, solicitation of a minor to commit patronizing prostitution, a Class C felony; and count three, solicitation of a minor to commit aggravated statutory rape, a Class E felony. The subsequent pages of the indictment read:

### COUNT ONE

The Grand Jurors of Maury County, Tennessee, duly impaneled, and sworn upon their oath, present: That IVAN ASHLEY on or about the 8th day of July, 2021, in Maury County, Tennessee and before the finding of this indictment, did unlawfully solicit or hire another person with the intent that the other person engage in prostitution, that person being a law enforcement officer posing as a minor, who IVAN ASHLEY reasonably believed to be less than eighteen (18) years of age, in violation of Tennessee Code Annotated Section 39-13-514, all of which is against the peace and dignity of the State of Tennessee.

### COUNT TWO

The Grand Jurors of Maury County, Tennessee, duly impaneled, and sworn upon their oath, present: That IVAN ASHLEY on or about the 8th day of July, 2021, in Maury County, Tennessee and before the finding of this indictment, being a person eighteen (18) years of age or older (DOB 08/20/1971), did directly by means of electronic communication, unlawfully and intentionally command, request, hire, persuade, invite or attempt to induce a law enforcement officer posing as a minor, and who IVAN ASHLEY reasonably believed to be less than eighteen (18) years of age, to engage in conduct that, if completed, would have constituted the offense of Patronizing Prostitution pursuant to Tennessee Code Annotated Section 39-13-514, and in violation of Tennessee Code Annotated Section 39-13-528, all of which is against the peace and dignity of the State of Tennessee.

### COUNT THREE

The Grand Jurors of Maury County, Tennessee, duly impaneled, and sworn upon their oath, present: That IVAN ASHLEY on or about the 8th day of July, 2021, in Maury County, Tennessee and before the finding of this

indictment, being a person eighteen (18) years of age or older (DOB 08/20/1971), did directly by means of electronic communication, unlawfully and intentionally command, request, hire, persuade, invite or attempt to induce a law enforcement officer posing as a minor, and who IVAN ASHLEY reasonably believed to be less than eighteen (18) years of age, to engage in conduct that, if completed, would have constituted the offense of Aggravated Statutory Rape pursuant to Tennessee Code Annotated Section 39-13-506 and in violation of Tennessee Code Annotated Section 39-13-528, all of which is against the peace and dignity of the State of Tennessee.

The Defendant proceeded to a bench trial on March 6, 2022.

At trial, Special Agent Jason Wilkerson of the Tennessee Bureau of Investigation ("TBI") Human Trafficking Unit testified as an expert in human trafficking and prostitution investigations that in July 2021, the TBI and the Springhill Police Department ("SPD") participated in a joint, undercover operation at the Hampton Inn on Crossings Boulevard. Agent Wilkerson explained the operation as follows: Prior to the operation, law enforcement posted advertisements on the online websites Skipthegames and MegaPersonals. The advertisements contained the telephone numbers for female officers acting as decoys and photographs of adult females who resembled the undercover officers. A customer would call one of the telephone numbers and speak with an undercover officer about sexual services. During the conversation, the undercover officer would claim that she was sixteen years old. Most customers were not interested in services from a minor and would discontinue the conversation. However, if the customer was still interested, the undercover officer would arrange to meet the customer at the hotel. When the customer arrived, the undercover officer would direct the customer to a room that was being monitored with video and listening devices. The customer and the undercover officer would arrange to exchange sexual services for money, the undercover officer would give a "takedown" word, and an arrest team would enter the room and arrest the customer. Agent Wilkerson acknowledged that on July 8, 2021, the Defendant was arrested in a hotel room pursuant to the operation.

Agent Wilkerson testified that customers and undercover officers often used certain terms to refer to sexual services. Specifically, "[h]ead" referred to oral sex; "BB" stood for "bare back," meaning without a condom; "QV" stood for "quick visit"; "HH" stood for "half hour"; "HR" meant one hour; "Greek" meant anal sex; "[r]aw" meant without a condom; "[o]utcall" meant the undercover officer would go to the customer's location; and "[i]n call" meant the customer would go to the undercover officer's location. The undercover operation in this case only involved customers going to the undercover officer's location, i.e., the hotel.

- 3 -

On cross-examination, Agent Wilkerson acknowledged that the advertisements said the decoy was twenty-two years old. The advertisements also included the following disclaimer:

"I am a professional service provider. Earnings, fees, and compensation paid to me are for my time and companionship only. Any actions that take place in our contracted time frame are of mutual choice between consenting adults."

Lieutenant Michael Foster of the SPD testified that on July 8, 2021, he was a detective assigned to the Criminal Investigation Division and participated in the undercover operation. His role was to extract information from cellular telephones that belonged to undercover officers and arrested customers. Lieutenant Foster used a tool called "Cellebrite" to extract information from the Defendant's telephone. He identified text messages exchanged between the Defendant's telephone and an undercover officer's telephone for the trial court, and the State introduced the text messages into evidence.

Detective Stephani Gillam testified that she was one of the undercover officers who participated in the operation and that she wore a cutoff shirt, a pair of jeans, and a style of shoe that was popular with teenagers. She also styled her hair like a teenager. On the afternoon of July 8, 2021, the Defendant sent her a text message asking for a "date," and she responded with two texts that said, "Sure" and "What u want[?]" The Defendant answered, "Head and sex bb." Detective Gillam responded, "QV $60 HH $100 Hour $150 Greek $50 extra," meaning that a quick visit was $60, that a half-hour visit was $100, that a one-hour visit was $150, and that anal sex was $50 extra. The Defendant responded with a text message that said, "Hh head n sex raw," meaning that he wanted a half-hour visit, oral sex, and sex without a condom. Detective Gillam texted to the Defendant, "U a cop?" He answered no and asked, "U do outcall[?]" She responded, "Incall." The Defendant then texted, "Do you offer any fetish?" She answered yes and asked what he wanted, and he responded, "Head and sex raw." She texted, "QV $60 HH $100 Hour $150 Greek $50 extra." He responded, "QV." She then sent him two texts that said: "K u gonna have to wear a condom" and "I'm 16 I ain't tryn to get pregnant." The Defendant responded, "U 16[?]" Detective Gillam answered, "Yeah" and "I'm jus tryn to make money[.]" The Defendant responded, "O ok[.]" Detective Gillam texted the address for the Hampton Inn to the Defendant, and he sent her a text that said he was on his way. He later sent her a text saying that he was in the hotel parking lot, and she texted him the room number.

Detective Gilliam identified a video that was recorded in the hotel room, and the State played the video for the court while Detective Gilliam explained the video. She said the video showed the Defendant enter the room and hand her sixty dollars for a quick visit, which was their agreement. She handed him a condom and reiterated that she was sixteen

years old and did not want to get pregnant. The Defendant requested to wear a different condom and dropped his pants to his ankles. Detective Gilliam saw that his genitals were exposed and gave the takedown word. The arrest team entered the room and arrested him.

On cross-examination, Detective Gillam testified that she was thirty-five years old on July 8, 2021. On redirect examination, she acknowledged that she advised the Defendant via text and again in the hotel room that she was sixteen years old.

Detective Joshua Weber of the SPD testified that he participated in the undercover operation and spoke with the Defendant after the Defendant's arrest. Detective Weber read *Miranda* warnings to the Defendant, who was forty-nine years old, and the Defendant signed a waiver of rights form. The Defendant told Detective Weber that he and the undercover officer agreed to have sex in a hotel room and that she told him that she was sixteen years old. The Defendant claimed, though, that he did not believe the undercover officer was sixteen. The Defendant told Detective Weber that "the whole thing seemed kind of fishy" but that he went to the hotel anyway because he was "just being a dumbass." Detective Weber said he thought that the Defendant showed up at the hotel to have sex with a prostitute and that the Defendant wanted to see if she was really sixteen years old. On cross-examination, Detective Weber acknowledged that the Defendant thought the undercover officer was lying about her age.

At the conclusion of Detective Weber's testimony, the State rested its case, and defense counsel made an oral motion for judgment of acquittal. Regarding count one, defense counsel argued that the Defendant was not guilty of patronizing prostitution from a minor, a Class B felony, because he patronized prostitution from a law enforcement officer posing as a minor, a Class A misdemeanor. As to count two, defense counsel asserted that the charge was "consumed by Count 1" and "frankly doesn't fit." Regarding count three, defense counsel argued that the proof showed the Defendant did not believe the undercover officer's claim that she was a minor and that, in any event, the statute for solicitation of a minor did not list aggravated statutory rape as one of the offenses for which a defendant could solicit a minor.

The trial court took the matter under advisement. On March 25, 2022, the trial court entered a written "Judgment" in which the court summarized the proof presented at the bench trial and stated its factual findings. Specifically, the trial court found that the Defendant and Detective Gillam, a police officer posing as a minor, exchanged text messages and came to an agreement for sexual services; that Detective Gillam told the Defendant she was sixteen years old; and that the Defendant delivered $60 to Detective Gillam for sex. The trial court then found the statute for patronizing prostitution ambiguous; considered the legislative history; and concluded that, "when looking at the entire statute," the Defendant was guilty of patronizing prostitution from a minor, a Class

B felony, in count one. The trial court did not rule on the motion regarding the charges of solicitation of a minor in counts two and three.

On June 3, 2022, the Defendant filed a renewed motion for judgment of acquittal as to count one, maintaining that he was only guilty of patronizing prostitution from a law enforcement officer posing as a minor, a Class A misdemeanor. The record reflects that on June 6, 2022, the trial court entered judgments of conviction, finding the Defendant guilty of patronizing prostitution from a minor in count one, solicitation of a minor to commit patronizing prostitution in count two, and solicitation of a minor to commit aggravated rape in count three and sentencing him to eight years, three years, and one year, respectively.[1] The trial court merged the convictions and ordered that the Defendant be placed on the sex offender registry.

On June 20, 2022, the Defendant filed an amended renewed motion for judgment of acquittal, again arguing that the evidence showed he committed only a Class A misdemeanor in count one. As to count two, the Defendant argued that the conviction was "non-sensical" in that in order to prove the offense, the State had to show he solicited a law enforcement officer posing as a minor to solicit prostitution. As to count three, the Defendant argued that the indictment failed to state an offense because aggravated statutory rape was not listed as one of the offenses for which a defendant could solicit a minor. On July 29, 2022, the trial court entered an order agreeing with the Defendant as to count three but denying his motion as to counts one and two. The Defendant appeals the ruling of the trial court, claiming that the evidence is insufficient to support the two convictions.

## ANALYSIS

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

Therefore, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *See State v. Williams*,

---

[1] According to the Defendant's brief, the parties appeared before the trial court on June 6, 2022, and the trial court announced it also was finding the Defendant guilty as charged in counts two and three of the indictment. The transcript of the hearing is not in the appellate record.

657 S.W.2d 405, 410 (Tenn. 1983). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). Accordingly, in a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of review for the sufficiency of the evidence is the same whether the conviction is based on direct or circumstantial evidence or a combination of the two. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

## I. Patronizing Prostitution

First, the Defendant claims that the evidence is insufficient to support his conviction of patronizing prostitution from a minor when the proof shows he patronized prostitution from a law enforcement officer posing as a minor and that the trial court erred by punishing him for a Class B felony instead of a Class A misdemeanor. The State acknowledges that the Defendant's conviction is a Class A misdemeanor. We agree with the Defendant and the State.

Although the Defendant has framed his issue as one of insufficient evidence, he is essentially challenging the trial court's interpretation of Tennessee Code Annotated section 39-13-514, the statute for patronizing prostitution. In reviewing issues of statutory construction, we conduct a de novo review of the trial court's rulings without any presumption of correctness. *See Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). Our "role in statutory interpretation is 'to determine what a statute means.'" *State v. DeBerry*, 651 S.W.2d 918, 924 (Tenn. 2022) (quoting *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 175 (Tenn. 2008). Our goal is to "ascertain and give effect to [the] legislative intent without broadening the statute beyond its intended scope." *Carter*, 279 S.W.3d at 564. "When a statute's meaning is clear and unambiguous after consideration of the statutory text, the broader statutory framework, and any relevant canons of statutory construction, we 'enforce the statute as written.'" *Id.* at 925 (quoting *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013)). However,

when a penal statute remains "grievous[ly] ambigu[ous] or uncertain[ ]," *Huddleston v. United States*, 415 U.S. 814, 831 (1974), the rule of lenity operates as a "tie-breaker" and requires us to resolve the ambiguity in the defendant's favor, *State v. Welch*, 595 S.W.3d 615, 623 n.4 (Tenn. 2020) (quoting *State v. Marshall*, 319 S.W.3d 558, 563 (Tenn. 2010)).

*Id*. "We must presume that the General Assembly is aware of prior enactments . . . when enacting legislation." *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009)

"Patronizing prostitution" is defined as "soliciting or hiring another person with the intent that the other person engage in prostitution, or entering or remaining in a house of prostitution for the purpose of engaging in sexual activity." Tenn. Code Ann. § 39-13-512(3). "'Prostitution' means engaging in, or offering to engage in, sexual activity as a business or being an inmate in a house of prostitution or loitering in a public place for the purpose of being hired to engage in sexual activity." Tenn. Code Ann. § 39-13-512(6).

At the time of the undercover operation in July 2021, Tennessee Code Annotated section 39-13-514, which is titled "Patronizing prostitution – Unacceptable Defenses," provided as follows:

(a)  A person commits an offense under this section:

(1)  Who patronizes prostitution; or

(2)  When a person patronizes prostitution where the subject of the offense is a law enforcement officer or a law enforcement officer eighteen (18) years of age or older posing as a minor.

(b)(1)  Patronizing prostitution is a Class A misdemeanor.

(2)  Patronizing prostitution within one and one-half (1.5) miles of a school shall, in addition to any other authorized punishment, be punished by no less than seven (7) days of incarceration and by a fine of not less than one thousand dollars ($1,000).

(3)(A)  Patronizing prostitution from a person who is younger than eighteen (18) years of age or has an intellectual disability is punishable as trafficking for commercial sex acts under § 39-13-309.

(B) Nothing in this subdivision (b)(3) shall be construed as prohibiting prosecution under any other applicable law.

(c) As used in subsection (b), "school" means all public and private schools that conduct classes in any grade from kindergarten through grade twelve (K-12).

(d) It is not a defense to a violation of this section that:

(1) The subject of the offense is a law enforcement officer;

(2) The victim of the offense is a minor and consented to the offense; or

(3) The solicitation was unsuccessful, the conduct solicited was not engaged in, or the law enforcement officer could not engage in the solicited offense.

Tenn. Code Ann. § 39-13-514 (Supp. 2019). Tennessee Code Annotated section 39-13-309 generally provided that a conviction of trafficking for a commercial sex act was a Class B felony. *See* Tenn. Code Ann. § 39-13-309(c) (2018).

Initially, we note that while the first page of the indictment listed count one as patronizing prostitution from a minor, the wording of count one alleged that he patronized prostitution from a law enforcement officer posing as a minor. In its March 2022 Judgment, the trial court found facts that showed the Defendant patronized prostitution from a law enforcement officer posing as a minor. Nevertheless, the trial court pronounced the Defendant guilty of patronizing prostitution from a minor. In doing so, the trial court explained as follows:

The problem in this case is the reading of T.C.A. § 39-13-514 in its entirety. Prior to 2014, the statute only included [subsections] (a), (b), and (c). In 2014, [subsection] (d) was added, which states, "It is not a defense to a violation of this section that: (1) the subject of the offense is a law enforcement officer; [or] (2) the victim of the offense is a minor and consented to the offense. . . ." If [subsection] (d) had not been added, the Defendant's argument would be much more persuasive. However, once [subsection] (d) was added in 2014, the new [subsection] (d) must be considered when looking at the entire statute.

. . . .

- 9 -

[T]his Court believes it must take into account [subsection] (d) in that reading. When taking [subsection] (d) into consideration despite its inartful drafting, the Court believes the plain and ordinary [language] of the statute establishes the necessary elements for a violation of T.C.A. § 39-11-504 when a person patronizes prostitution from a law enforcement officer acting as a person younger than eighteen (18) years of age, which is alleged in this case. As a result, the Court denies the Defendant's Motion for Judgment of Acquittal with regard to the indictment in Count 1 and, thus, finds the Defendant guilty of Count 1 in Case Number 29525.

The trial court entered a judgment of conviction that reflected a conviction of patronizing prostitution from a minor, a Class B felony.

We think the trial court's reasoning was flawed. The statute provided clearly and unambiguously that the offenses of patronizing prostitution and patronizing prostitution from a law enforcement officer posing as a minor were Class A misdemeanors whereas patronizing prostitution from an actual minor or a person with an intellectual disability was subject to the enhanced punishment of Tennessee Code Annotated section 39-13-309. The defenses listed in subsection (d) did not usurp the plain language of the previous subsections.

The Defendant acknowledges patronizing prostitution from a law enforcement officer posing as a minor. The trial court should have sentenced him for a for a Class A misdemeanor in count one.

## II. Solicitation of a Minor

Next, the Defendant claims that the evidence is insufficient to support his conviction of solicitation of a minor to commit patronizing prostitution. The State argues that the evidence is sufficient to support the Defendant's solicitation conviction but that the conviction is statutorily a Class B misdemeanor. We agree with the State.

Count two of the indictment alleged that the Defendant solicited a law enforcement officer posing as a minor to commit patronizing prostitution. Tennessee Code Annotated section 39-13-528(a)(11) provides that

[i]t is an offense for a person eighteen (18) years of age or older, by means of oral, written or electronic communication, electronic mail or internet services, directly or through another, to intentionally command, request, hire, persuade, invite or attempt to induce a person whom the person making the solicitation knows, or should know, is less than eighteen (18) years of age,

or solicits a law enforcement officer posing as a minor, and whom the person making the solicitation reasonably believes to be less than eighteen (18) years of age, to engage in *conduct* that, if completed, would constitute a violation by the soliciting adult of [patronizing prostitution pursuant to Tennessee Code Annotated section 39-13-514].

(Emphasis added.)

The Defendant contends that the word "conduct" in the statute referred to "patronizing prostitution"; therefore, in order to find him guilty of solicitation of a minor, the trier of fact had to conclude that he solicited a law enforcement officer posing as a minor to then engage in patronizing prostitution. By the Defendant's own admission, such an interpretation is "illogical." The State argues that while the Defendant's contention is "creative," it does not afford the Defendant relief.

Simply put, Tennessee Code Annotated section 39-13-528 criminalizes soliciting certain conduct from a minor or a law enforcement officer posing as a minor if that conduct would meet the definition of one of the crimes listed in the statute. Patronizing prostitution is one of the crimes listed. Although the underlying offense was actually committed in this case, it is no defense that the solicitation was unsuccessful, that the conduct solicited was not engaged in, or that the law enforcement officer could not engage in the solicited offense. Tenn. Code Ann. § 39-3-528(b).

Taken in the light most favorable to the State, the evidence shows that the Defendant, a forty-nine-year-old male, sent Detective Gillam, a law enforcement officer posing as minor, a text message in which he asked her for a "date." They continued exchanging text messages, and the detective advised the Defendant that she was sixteen years old. The Defendant acknowledged the officer's claimed age and nevertheless agreed to pay her $60 for sex. The Defendant admits that such conduct, by him, constituted patronizing prostitution from a law enforcement officer posing as a minor. Accordingly, the evidence is sufficient to support his conviction for solicitation of a law enforcement officer posing as a minor to commit patronizing prostitution. As noted by the State, convictions pursuant to the solicitation statute "shall constitute an offense one (1) classification lower than the most serious crime solicited." Tenn. Code Ann. § 39-13-528(c). Therefore, the Defendant's conviction is a Class B misdemeanor.

## CONCLUSION

Based upon our review of the record, the Defendant's conviction of patronizing prostitution from a minor in count one is modified to patronizing prostitution from a law enforcement officer posing as a minor, a Class A misdemeanor. His conviction of

solicitation of a minor to commit patronizing prostitution in count two is modified to solicitation of a law enforcement officer posing as a minor to commit patronizing prostitution, a Class B misdemeanor.  The case is remanded to the trial court for resentencing.

_____
JOHN W. CAMPBELL, SR., JUDGE